HENRY H. DOWNING, Receiver *vs.* THOMAS H. ROBINSON et al.

*Principal and Surety—Subrogation—Acceptance of Third Party's Obligation in Satisfaction of Debt.*

Seven persons agreed among themselves to buy certain parcels of land from an Improvement Company, and, in accordance with their agreement, the property was conveyed to one of

them, A., individuallay, who executed to the Improvement Company, his personal bonds for the deferred payments. He also signed a declaration of trust setting forth the real interest of the parties in the property. Each one of the purchasers paid his one-seventh of the first two instalments of the purchase money to A., who paid it over to the company. No other payments were made and upon the insolvency of the company, its receiver filed the bill in this case to enforce payment of the balance of the purchase money from said persons, other than A., alleging that defendants were each bound to pay one-seventh thereof to A. and that the plaintiff, as a creditor of A., is entitled to be subrogated to his claim against the defendants. *Held,* that A. was not a surety for the defendants, who were not directly indebted to the company, and A. had not paid any money for them, and that the Receiver is not entitled to maintain the bill.

*Held,* further, that if the liability of the defendants to the company was not extinguished by its acceptance of A.'s individual bonds for their debt, it is barred by the Statute of Limitations.

*Decided November 12th, 1908.*

Appeal from the Circuit Court for Harford County (DUNCAN, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*E. P. Keech, Jr.,* and *Osborne I. Yellott,* for the appellant.

*Wm. H. Harlan* and *Thomas H. Robinson,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The bill in this case asserts and seeks to enforce the right of the appellant to the benefit of an alleged claim of the ap-

pellee, Charles A. Macatee, against his co-appellees for a por-
tion of the purchase money for certain building lots. The
material circumstances which are asserted to have conferred
on the appellant the right of subrogation or substitution to
the claim of Macatee appear from the record to have been as
follows:

In the year 1890 a Virginia corporation known as the
Front Royal and Riverton Improvement Company, of which
Henry A. Downing was president and Charles A. Macatee was
a director, attempted to develop as an addition to the town
of Front Royal a tract of farming land lying in its vicinity.
For that purpose the means then currently employed in ex-
ploiting town sites in the Valley of Virginia were adopted.
Engagements were secured from various educational, manu-
facturing and industrial enterprises to establish themselves
on the property. The land was platted and laid out in streets
and blocks and a prospectus was prepared and issued setting
forth in glowing terms the present advantages and future
prospects of the situation, and then building lots were offered
for sale.

The appellees, other than Charles A. Macatee, were resi-
dents of Maryland, and had no interest in the improvement
company; but, their attention having been called to its enter-
prise, they visited Front Royal and inspected the property to
see whether it presented any opportunities for profitable in-
vestment.

The fever of speculation then prevalent in that neighbor-
hood proved sufficiently contagious to induce them to agree
on October 20th, 1890, to purchase from the company eleven
of its building lots, embracing in all about one acre of land,
at prices aggregating $8,100, to be paid one-third cash and
the balance one-half in one year and the other in two years
after date. A short time thereafter it was agreed between
the purchasers of the lots and Charles A. Macatee that he
should assume one-seventh interest in the purchase and that
as a matter of convenience, the title to the property should
be taken and held in his name. The first instalment of pur-

chase money was paid by the seven appellees in equal shares and the eleven lots were conveyed by the company to Macatee, who gave to it his twenty-two individual bonds for the two deferred instalments. He then as evidence of the nature of his holding of the title as between him and his co-appellees executed and delivered to them the following declaration of trust:

"This declaration of trust made this. . . . . . . . . . . . day of November, in the year eighteen hundred and ninety by C. A. Macatee of Front Royal, Virginia.

"Whereas, the said C. A. Macatee has received from the Front Royal & Riverton Improvement Company of Front Royal, Va., deeds for the following lots in or near Front Royal, Va., viz:—lots No. 23 & 24 in block 23, Sixth St. Lot 14 in block 18, Sixth St.; Lots 1 and 2 in block 17, Va. Avenue; Lots 1 and 2, block 15, Va. Avenue; Lots 9 & 10, block 21, Commerce Avenue, and Lots 1 and 2, block 33, Warren Avenue, as located on a plot of the property owned by said Front Royal & Riverton Improvement Company, and whereas the said C. A. Macatee has only a one-seventh interest in said lots, the other six-sevenths interest therein being owned equally by J. H. C. Watts, Martin L. Jarrett, Edwin H. Webster of Jno., William S. Forwood, Jr., Thomas H. Robinson and Frank B. Macatee, all of Harford County, in the State of Maryland, and whereas said parties have paid to the said Front Royal and Riverton Improvement Company one-third of the purchase money, each party paying one-seventh thereof (being $350.58) at the execution of said deeds to C. A. Macatee; and whereas said lots were purchased as aforesaid for the purpose of conveying them to such purchaser or purchasers at such time and for such price as the parties interested therein may direct, and to save inconvenience and delay in the execution of a conveyance it was agreed that the legal title to said lots should be put in the name of the said C. A. Macatee.

"Now, therefore, the said C. A. Macatee does hereby declare that he has only a one-seventh interest in the aforesaid

lots purchased from the Front Royal & Riverton Improvement Company and particularly described in the deed from said company to the said Macatee, the other six-sevenths interest therein being owned equally by the said J. H. C. Watts, Martin L. Jarrett, Edwin H. Webster of Jno., William S. Forwood, Jr., Thomas H. Robinson and Frank B. Macatee, of Harford County, Maryland.

"Witness my hand and seal the day and year above mentioned.

"C. A. MACATEE. (Seal)."

The second instalment of purchase money for the lots was paid at or near its maturity by Charles A. Macatee, to whom the other appellees each sent a check for his share of the instalment, although the improvement company and its development scheme had already sunk into a languishing condition. When the third instalment fell due Charles A. Macatee paid his own one-seventh of it, but the other appellees, with the exception of J. H. C. Watts, never paid their shares of it. By that time the speculative boom in the valley had collapsed and the improvement company and its projects had come to naught. Charles A. Macatee was financially ruined by the failure of the company, and he still remains in an insolvent condition.

On the 28th of February, 1898, Henry H. Downing was appointed receiver of the improvement company by the Circuit Court of Warren County, Virginia, and directed to collect the assets of the corporation and to institute and maintain such suits as might be necessary for that purpose. On October 21st, 1904, but three days less than twelve years after the maturity of the last instalment of the purchase money for the lots purchased from the company by the appel· lees, Downing, as receiver, having first obtained leave of the Court for that purpose, filed the present bill againts them for the recovery of that instalment with interest.

The theory of the bill is that, as the result of the relation existing between the appellees in reference to the purchase of the lots referrd to, Charles A. Macatee stands in the atti-

tude of surety for his co-appellees, and in that situation is
entitled to claim reimbursement from them to the extent of
their respective portions of the unpaid balance of purchase
money and interest, and that the appellant, as the creditor
of Macatee, is entitled to the benefit of his claim against
them. All of the appellees as defendants below answered
the bill. Charles A. Macatee filed a separate answer, prac-
tically admitting all of the allegations of the bill and con-
senting to the granting of the relief prayed for. The other
appellees, as defendants, filed a joint answer, admitting the
purchase of the lots and their conveyance to Charles A.
Macatee and the execution by him of the declaration of trust
in their favor and the payment by them of two instalments
of the purchase money and the non-payment of the third
one by any of them, except J. H. C. Watts, but denying the
existence of any indebtedness or obligation on their part to
Macatee or to the appellant or the corporation of which he
claimed to be the receiver. Their answer further set up by
way of defense that they had been induced to purchase the
lots by the fraudulent representations of Downing and Maca-
tee, as president and director of the improvement company.
They also set up and relied upon the Statute of Limitations,
in their answer, as a defense to the bill. The case was heard
in due course in the Court below and the bill was dismissed
by the decree, from which this appeal was taken.

The appellant contends that in the state of facts to which
we have adverted Charles A. Macatee should be in equity re-
garded as standing in the situation of surety for his co-appel-
lees for the payment of the purchase money for the eleven
lots, and he invokes in behalf of the improvement company,
under whose title he claims, the well-recognized equitable
proposition, that when a principal debtor has given any
security or other pledge to his surety the creditor is entitled
to the benefit of such security or pledge in the hands of the
surety, to be applied in payment of the debt.

He also relies upon the other equitable doctrine, which has
repeatedly been recognized by this Court, that a surety, after

.the debt has become due, may maintain a bill to require the principal debtor to pay it, whether the surety has been sued for it or not. Both of these two equitable ·doctrines are supported on the appellant's brief, by the citation of numerous decisions of this and other Courts, and if either of them were .applicable to the facts disclosed by the record it may be conceded that it would be conclusive of his right to recover.

It is, however, fundamental to both of the propositions so relied on by the appellant that Charles A. Macatee be determined to have been *surety* for his co-appellees for the payment ·of the purchase money for the eleven lots, but we are unable to find in the record sufficient ground for holding him to have ·occupied that relation to them. He was not formally their .surety, for the bonds which he gave to the company for the deferred payments were not their obligations on which he appeared as surety. They were his individual obligations for a debt for which both he and his co-appellees had been ·originally liable.

The arrangement, in reference to the purchase and proposed sale of the lots, into which the appellees entered, as evidenced by the declaration of trust executed by Macatee, ·created a tenancy in common or at most co-partnership as between them, but it did not involve a suretyship. A somewhat similar arrangement as to the purchase and sale of lands for account of several persons was held by us in *Mogart* v. *Smouse,* 103 Md. 463, to have constituted its participants ·co-partners. The present case fails to fall within the operation of the first mentioned of the two equitable doctrines under discussion for the further reason that the record does not show that the appellees, other than Macatee, ever placed in his hands any security or pledge which can be applied to the payment of the debt now sought to be recovered.

Nor is the appellant entitled to the benefit of the other proposition relied on in his brief and supported by the authorities therein cited, that when a surety or even an agent has paid a debt of the principal debtor he is entitled to recover from the latter the amount so paid for him, because

Macatee, to whose right the appellant seeks to be subrogated, is not shown to have paid any debt for which his co-appellees were liable, otherwise than with funds furnished to him by them for that purpose.

The original liability of the appellees to pay for the lots purchased were, so far as the record shows, a simple contract obligation. If that obligation was not extinguished under the rulings of this Court in *Davidson* v. *Kelly,* 1st Md. 492, by the giving and receipt of Macatee's individual bond for the debt, it has long been barred by the Statute of Limitations, which was set up by the answer of the appellees as a defense to the present suit.

During the progress of the case below the appellees as defendants took a number of exceptions to the admission of testimony, but they were not passed upon by Circuit Court for the reason doubtless that the appellant as plaintiff had not made out a case for relief in equity. Having come to the same conclusion as to the insufficiency of his case, we deem it unnecessary to notice those exceptions. We think it due to the appellant and to the appellee, Charles A. Macatee, to say that, in our judgment, the record does not sustain the charges made against them in the answer of the other appellees of fraudulent conduct in procuring or making the sale of the lots on behalf of the improvement company.

For the reasons stated in this opinion the decree appealed from will be affirmed.

*Decree affirmed with costs.*